**STATE of Texas et al., Relators,**

v.

**The Honorable Stephen F. PRESLAR, Judge et al.**

**No. C–7125.**

Supreme Court of Texas.

April 27, 1988.

Rehearing Denied June 22, 1988.

---

Jose Manuel Rangel, Office of the Atty. Gen., Energy Div., David R. Richards, Richards, Wiseman & Durst, Austin, for relators.

Robert I. Howell, Larry F. York, Baker & Botts, Austin, William Monroe Kerr, Kerr, Fitz–Gerald & Kerr, Midland, Richard D. Milvenan, Vinson & Elkins, Austin, W.D. Masterson, Kilgore & Kilgore, Inc., Dallas, Charles R. Roberts, Foster, Lewis, Langley, Gardner & Banack, Inc., San Antonio, Jon David Ivey, Dotson, Babcock & Scofield, Houston, Jim Dear, P.C., Austin, for respondents.

ORIGINAL MANDAMUS PROCEEDING

ROBERTSON, Justice.

This original mandamus proceeding concerns the assignment of the Honorable Stephen F. Preslar, retired Chief Justice of the Eighth Court of Appeals, to sit as a visiting judge in the 83rd District Court of Pecos County, Texas, to hear cause number 4708, *Summit Energy, Inc. v. Texas Commerce Bank—Austin N.A., Trustee, et al.* At issue are the authority of the Chief Justice of the Supreme Court to assign a retired appellate judge to sit as a visiting district judge within the administrative region where he resides, and the right of the parties to the litigation to object to the assignment of a visiting judge.

The underlying litigation was commenced by Summit Energy, Inc., to cancel an oil and gas lease in which it owns the working interest. Owners of royalty interests in the lease were named as defendants. Because the lease covers minerals owned by the State of Texas, Land Commissioner Garry Mauro, represented by the Attorney General, intervened.

The Honorable Alex R. Gonzalez, Judge of the 83rd Judicial District Court, initially presided over the litigation. Although the record is silent on the matter, respondents asserted in oral argument that because of his crowded docket, Judge Gonzalez asked the presiding judge of the Sixth Administrative Judicial Region, The Honorable Sam Paxson, to assign a visiting judge to try the case. Judge Paxson, in turn, asked the Honorable John L. Hill, Jr., Chief Justice of the Supreme Court, to assign Judge Preslar to the case.

The Chief Justice accommodated the presiding judge and by letter dated September 24, 1987, advised the parties in *Summit Energy, Inc. v. Texas Commerce Bank— Austin N.A., Trustee, et al.,* of Judge Preslar's assignment. The Land Commissioner filed a written objection to the assignment, seeking to disqualify Judge Preslar pursuant to Section 74.053 of the Government Code. Tex.Gov't Code Ann. § 74.053 (Vernon 1988). When Judge Preslar subsequently scheduled a pre-trial hearing, the Land Commissioner filed the present origi-

nal proceeding challenging the assignment of Judge Preslar and his continuation in the case following the timely objection to assignment. Summit Energy, the plaintiff in the underlying action, aligned itself with the Land Commissioner, challenging the assignment of Judge Preslar. Texas Commerce Bank and others who hold a royalty interest and are defendants in the underlying litigation (hereinafter collectively referred to as the "Bank") have aligned themselves in support of the assignment.

The Land Commissioner initially argues that the Chief Justice exceeded his authority in making the assignment of Judge Preslar because, absent special circumstances, the Chief Justice may only assign a visiting judge to district courts lying outside the administrative judicial region in which the retired judge resides. The assignment of judges is governed by Chapter 74 of the Government Code. Tex.Gov't Code Ann. § 74.041 et seq. (Vernon 1988). The assignment of retired judges, such as Judge Preslar, is also mentioned in Chapter 75 of the Government Code, but the scope and application of the power exercisable by the Chief Justice and the presiding judges is again referenced to subchapter C of Chapter 74. *Id.* § 75.002(b). Under Chapter 74, the Chief Justice is granted the power to assign judges from one administrative region "for service in other administrative regions." *Id.* §§ 74.002 and 74.057. In contrast, the presiding judge of the administrative region is generally charged with the authority to assign judges residing within the region. *Id.* § 74.056; *see also* Tex.Rev.Civ.Stat.Ann. art. 200a–1—Appendix, Rule 8, Rules of Judicial Administration (Vernon Supp.1988).

■ Under certain circumstances, the Chief Justice is authorized "to make assignments within an administrative region and perform other duties of a presiding judge." Tex.Gov't Code Ann. § 74.049 (Vernon 1988). The Chief Justice may act for the presiding judge, and make assignments within an administrative judicial region when the presiding judge is incapacitated, dies, resigns, or disqualifies himself in the matter. *Id.* Because none of these

circumstances existed here, we agree that the assignment of Judge Preslar by the Chief Justice does not comport with the governing statute and is therefore invalid.

■ The Land Commissioner also argues that even assuming a valid assignment, Judge Preslar was disqualified to hear the case because of the Land Commissioner's timely objection to the assignment. Although Section 74.053 of the Government Code (the "objection statute") provides for objection to an assigned judge, there is some confusion surrounding its meaning. Prior to the 70th legislative session, the statute authorized unlimited objections to assigned judges. The Land Commissioner submits that in 1987, the 70th Legislature amended the statute limiting each party to a case to one objection. The Bank agrees that the statute was amended by the 70th Legislature, but contends further that the objection statute was subsequently repealed during that same session of the Legislature. Because of this repeal, the Bank contends that other than by a motion to recuse, parties in litigation are no longer permitted to challenge an assigned judge.

The confusion surrounding the objection statute is aptly demonstrated by West Publishing Company, which has published the statute's text as it was prior to the 70th legislative session followed by an explanation of the 1987 amendment to subsection (b):

§ **74.053. Objection to Assigned Judge**

(a) When a judge is assigned under this chapter the presiding judge shall, if it is reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party to the case that is to be heard in whole or part by the assigned judge.

(b) If a party to a civil case files a timely objection to the assignment, the judge is disqualified to hear the case.

(c) An objection under this section must be filed before the first hearing or trial, including pretrial hearings, over which the assigned judge is to preside.

Added by Acts 1987, 70th Leg., ch. 148, § 2.93(a), eff. Sept. 1, 1987.

### Amendment by Acts 1987, 70th Leg., ch. 505, § 1

*Section 1 of Acts 1987, 70th Leg., ch. 505, purports to amend § 4.013(b) of Vernon's Ann.Civ.St. art. 200a–1 [now, this section] without reference to the repeal of said article by Acts 1987, 70th Leg., ch. 148, § 2.93(b)(4) and Acts 1987, 70th Leg., ch. 674, § 2.14. As so amended, § 4.013(b) reads:*

*"If a party to a civil case files a timely objection to the assignment, the judge is disqualified to hear the case. Each party to the case is only entitled to one objection under this subsection for that case."*

*Acts 1987, 70th Leg., ch. 148, § 5.01(c) provides, in part, that the repeal of a statute by this Act does not affect an amendment of the statute by the 70th Legislature, Regular Session, 1987, and the amendment is preserved and given effect as part of the code provision that revised the statute so amended.*

Prior to 1987, a party's right to object to an assigned judge was found in § 4.013 of the Court Administration Act, Tex.Rev.Civ. Stat.Ann. art. 200a–1. Court Administration Act, Ch. 732 § 4.013, 1985 Tex.Gen. Laws 2533, 2539, repealed by Act of May 21, 1987, Ch. 148, § 2.93(b)(4), 1987 Tex. Gen.Laws 1064, 1178 and Act of June 18, 1987, Ch. 674, § 2.14, 1987 Tex.Gen.Laws 5017, 5036. Three bills enacted during the 70th Legislature dealt with § 4.013 of the Court Administration Act (the objection statute): Senate Bill 895, part of the State's continuing nonsubstantive statutory revision program; House Bill 287 by Representative Hollowell (the Hollowell Bill), amending only § 4.013 of the Court Administration Act; and Senate Bill 687 by Senator Farabee (the Farabee Bill), which revised several sections of the Court Administration Act.

First in time was S.B. 895, which simply transferred the existing Court Administration Act into the Government Code. Senate Bill 895 was intended as a non-substantive recodification of previous law. As such, it carried forward § 4.013, the objection statute, as § 74.053 of the Government Code, so that it provided:

(a) When a judge is assigned under this chapter, the presiding judge shall, if it is reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party to the case that is to be heard in whole or in part by the assigned judge.

(b) If a party to a civil case files a timely objection to the assignment, the judge is disqualified to hear the case.

(c) An objection under this section must be filed before the first hearing or trial, including pre-trial hearings, over which the assigned judge is to preside.

Act of May 21, 1987, Ch. 148, § 293(a), 1987 Tex.Gen.Laws 1064, 1167.

Senate Bill 895 also stated that if it were to codify and repeal a statute, which the 70th Legislature later amended, revised, or reenacted, then the amendment, revision, or reenactment would be automatically incorporated into the appropriate Government Code section. *Id.* § 5.01(c) at 1396. The Code Construction Act provides for this same result. Tex.Gov't Code Ann. § 311.031(c) (Vernon 1988). Senate Bill 895 passed relatively early in the session, on April 30, 1987.

Next came the Hollowell Bill, which amended § 4.013 of the Court Administration Act. This amendment added a sentence limiting the objection statute with the following language:

(b) If a party to a civil case files a timely objection to the assignment, the judge is disqualified to hear the case. Each party to the case is only entitled to one objection under this subsection for that case.

Act of June 17, 1987, Ch. 505, § 1, 1987 Tex.Gen.Laws 4223.

Under S.B. 895, this language was automatically incorporated into § 74.053(b) of the Government Code. Shortly after the enactment of the Hollowell Bill, the Farabee Bill, a more extensive revision of the Court Administration Act, was enacted.

The Farabee Bill did not expressly amend § 4.013, the objection statute, but did specifically include that section among those to be repealed. Act of June 18, 1987, Ch. 674, § 2.14, 1987 Tex.Gen.Laws 5017, 5036.

The Bank submits that the repeal of § 4.013 of the Court Administration Act must be incorporated into the Government Code's new version of that Act under the terms of the codifying bill, S.B. 895. The Bank argues that this creates an irreconcilable conflict between the Hollowell Bill, which amended § 4.013, and the Farabee Bill, which repealed it. Because the amendment and repeal of the same statute cannot be reconciled, the provision latest in date of enactment, here the Farabee repealer, must control. *See* Tex.Gov't Code Ann. § 311.025(a) (Vernon 1988). The Bank concludes that the effect of the Farabee Bill was to repeal that which was accomplished in the Hollowell Bill—the result being that despite what West has published in Chapter 74 of the Government Code, there no longer exists a § 74.053, the objection statute.

The Land Commissioner answers that the legislature did not intend to repeal the objection statute and that an examination of the circumstances surrounding the Hollowell and Farabee Bills will substantiate this contention. In construing any statute, the paramount concern of this Court is to give effect to the intent of the legislature. *One 1980 Pontiac v. State,* 707 S.W.2d 881, 882 (Tex.1986); *City of Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W. 2d 273, 278 (1951); *see also* Tex.Gov't Code Ann. § 312.005 (Vernon 1988). In determining whether or not the Hollowell Bill and the Farabee Bill can be reconciled, we may consider the "object to be attained," the "circumstances under which the statute was enacted," and the "legislative history." Tex.Gov't Code Ann. § 311.023(1)–(3) (Vernon 1988).

During the 70th legislative session, both the House and Senate were concerned with the parties' unfettered right to object to the assignment of a visiting judge provided in § 4.013 of the Court Administration Act. This concern was expressed in separate bills sponsored by Representative Hollowell and Senator Farabee. The Farabee Bill, in its initial form, did not allow for any objections to assigned judges. The version of the Hollowell Bill which originally passed the House preserved unlimited objections to assigned judges who were retired, but eliminated any objection to assigned judges who were currently elected. In the Senate's Committee on Jurisprudence, the Hollowell Bill was amended to allow only one objection per party to all assigned judges, whether elected or retired. Meanwhile, the House changed the Farabee Bill to provide for unlimited objections. The Senate, however, refused to accept this amendment to the Farabee Bill. Ultimately, on May 28, 1987, the House acquiesced and passed the Hollowell Bill with the Senate's amendment allowing one objection per party to any assigned judge.

The sole purpose of the Hollowell Bill was to amend the objection statute, § 4.013(b), codified in the Government Code as § 74.053(b). In contrast, the Farabee Bill was a lengthy piece of legislation revising a number of sections of the Court Administration Act. It was divided into separate articles in anticipation of S.B. 895's transfer of the Court Administration Act from Article 200a–1 to Chapter 74 of the Government Code. Article I of the Farabee Bill amended various provisions of the Court Administration Act. Article II recodified those amendments into the new numbering scheme of the proposed Government Code, allowing the amendments to fit into the new Code sections without renumbering. The last section of Article II of the Farabee Bill repealed all of the provisions revised and reenacted by Article I.

On May 29, 1987, the day after passage of the Hollowell Bill, the Farabee Bill was sent to a joint conference committee to reconcile the remaining differences between the House and Senate versions of the Bill. Up until the conference committee report, the Farabee Bill had included § 74.053 (Government Code) and had also repealed its predecessor § 4.013 (article 200a–1). In committee, the conferees deleted from the Bill § 74.053, but did not delete

§ 4.013 from the list of sections repealed from the former Court Administration Act.

It is apparent that when the Legislature passed the Hollowell Bill it intended to enact a law allowing parties one objection to a visiting judge. Indeed that was the only purpose of the Hollowell Bill. This issue generated much debate and was ostensibly laid to rest when the House finally concurred in the Senate's version, allowing one objection per party.

The legislative intent behind the repealer provision in the Farabee Bill is not so clear. Against the backdrop of the Hollowell Bill, it is puzzling why the Legislature would repeal the objection statute. After all the Legislature had fully debated the Hollowell amendment and had reached a compromise only a day before the Farabee Bill went to conference committee.

To aid in our deliberation, Summit Energy provides a copy of the conference committee report to the Farabee Bill and the side-by-side analysis of that bill. Summit Energy submits that when the conference committee intended to repeal provisions of the recently enacted Government Code it did so by express reference to the Code provisions, rather than by sole reference to the former Court Administration Act contained in Article 200a–1. Further, the side-by-side analysis of the conference committee bill indicates that the objection statute is preserved in the Government Code. Finally, the repealer in the Farabee Bill is found in provisions designed to conform the Government Code to existing law. Summit Energy concludes that existing law was the Hollowell Amendment to the objection statute. In this same vein, the Land Commissioner suggests that the inclusion of section 4.013 in the repealer was simply a house cleaning measure. Because the Hollowell Bill had both amended and reenacted section 4.013, the Land Commissioner suggests that without a subsequent repealer the objection statute would have appeared both in section 74.053 of the Government Code and as section 4.013 of the otherwise repealed Article 200a–1.

After considering all the circumstances surrounding the debate, amendment and apparent repeal of the objection statute, we are convinced that the Legislature did not intend to eliminate section 74.053 from the Government Code. We are persuaded that the conference committee removed the amendment to § 74.053 of the Government Code from the Farabee Bill because the Hollowell Bill had previously resolved the issue and that the repeal of the corresponding provision of the former Court Administration Act contained in Article 200a–1 remained in the Farabee Bill simply through oversight.

In conclusion, we hold that section 74.-053, the objection statute, was not repealed, but was amended by the 70th Legislature to permit each party to the case one objection to a judge assigned under Chapter 74, subchapter C, of the Government Code. We further hold that the Chief Justice of this court lacks the authority to assign a retired appellate judge to sit as a visiting district judge within the administrative region of his residence absent the special circumstances enumerated in section 74.049 of the Government Code. Because Judge Preslar resides within the Sixth Administrative Judicial Region, his assignment by the Chief Justice of this court to a district bench within that region was invalid. We conditionally grant the writ of mandamus. We are confident that its issuance will be unnecessary because Judge Preslar will remove himself from this case.

RAY, KILGARLIN, GONZALEZ and MAUZY JJ., concurred with opinions.

CULVER, J., dissented with opinion.

KILGARLIN, Justice, concurring.

I concur in the court's judgment. However, I share the view of Justice Ray that the 70th Legislature repealed the authorization of a peremptory challenge of retired or former judges. Additionally, I would urge the members of the legislature, should they consider readopting similar legislation, to delete the word "disqualified" from the language of Tex.Gov't Code § 74.053(b). The choice of that word is unfortunate, for it has constitutional impli-

cations that were probably unintended. However, the statute does (or did, if it has been repealed) read "[i]f a party to a civil case files a timely objection to the assignment, the judge is *disqualified* to hear the case" (emphasis added). The legislature is without authority to expand the grounds for disqualification set out in article V, section 11 of the Texas Constitution. Disqualification in a civil case is permissible, and required, in only three situations: whenever the judge: (1) is interested in the outcome of the case; (2) is related to a party by affinity or consanguinity within a proscribed degree; or (3) has acted as counsel in the case.

That neither this court nor the legislature can create additional grounds for judicial disqualification was probably best expressed by former Chief Justice Robert W. Calvert in a comment on this court's opinion in *Manges v. Guerra*, 673 S.W.2d 180 (Tex.1984). He stated:

> The opinion seems to the writer to leave not the slightest doubt that the only grounds for disqualification of a judge are those listed in art. 5, section 11, of the Constitution, and that the grounds set out in Canon 3C(1) should not be considered in the future as grounds for disqualification.

Calvert, *Disqualification of Judges*, 47 Tex.B.J. 1330, 1337 (1984), cited in Kilgarlin & Bruch, *Disqualification and Recusal of Judges*, 17 St. Mary's L.J. 599, 604 (1986). Case law certainly supports the view that the constitutional grounds of disqualification are exclusive. *Love v. Wilcox*, 119 Tex. 256, 263, 28 S.W.2d 515, 518 (1930). *See also Gaines v. Gaines*, 677 S.W.2d 727, 730 (Tex.App.—Corpus Christi 1984, no writ) (emphasizing distinction between mandatory constitutional disqualification as opposed to "advisory" rules in Code of Judicial Conduct); *River Road Neighborhood Ass'n v. South Texas Sports, Inc.*, 673 S.W.2d 952 (Tex.App.—San Antonio 1984, no writ) (the grounds of disqualification enumerated in the Constitution are mandatory, inclusive and exclusive).

I further believe that the legislature is constitutionally prohibited from exercising any power properly attached to the judicial branch, except in those instances that the Constitution of the State of Texas specifically allows. Tex.Const. art. II, § 1.

I concur in the court's judgment.

MAUZY, Justice, concurring.

This proceeding should never have arisen. In appointing Judge Stephen Preslar to preside over this case, the Chief Justice of this court acted entirely outside the scope of any legitimate power. As such, the assignment of Judge Preslar was void *ab initio*.

This case illustrates the inherent flaw of any system that would allow one political figure to appoint judges without accountability to the voters. The potential for abuse of that power is too tempting. In this particular proceeding, not only is it clear that the Chief Justice acted outside the scope of any statutory or constitutional authority in assigning an appellate judge to sit within the region of his residence, but we do not even have anything in the record before us to show that the elected sitting judge, Judge Gonzalez, ever officially requested to be relieved of the case. From all that confronts us in the record, it appears that the appointment of this particular judge to hear this particular case was simply an edict handed down from on high.

RAY, Justice, concurring.

I agree that the assignment of Judge Preslar by the Chief Justice did not comport with the applicable provisions of the Government Code and should be declared void. Had the court confined itself to this one controlling issue, I would not be compelled to write. Instead, the court ventures into what it perceives to be the "legislative history" surrounding the amendment and ultimate repeal of the objection statute. The vice in all this, apart from its obvious nature as dicta, is that the court substitutes its rationale of what the legislature must have intended for the consequences of what the legislature plainly did. Actions speak louder than words and here we do not even have words; only the active imagination of the court and what it deduc-

es must have transpired during the 70th legislative session.

Tracing the actions of the 70th Legislature with regard to the three bills which touched the objection statute, the following was clearly accomplished. First, the Legislature codified the objection statute in section 74.053 of the Government Code, transferring it from section 4.013 of the former Court Administration Act. Next, the Legislature amended the objection statute by amendment of section 4.013 of the Court Administration Act, which in turn by operation of the codifying bill transferred the amendment into section 74.053 of the Government Code. Finally, the Legislature repealed section 4.013 of the Court Administration Act which likewise by operation of the codifying bill repealed the corresponding section of the Government Code. In the final analysis the legislature plainly repealed the objection statute in its entirety, leaving the parties to the litigation without a basis for objection to a visiting judge under Chapter 74, subchapter C of the Government Code.

GONZALEZ, Justice, concurring.

I concur in the court's judgment, but do not agree that the original assignment of Judge Preslar was invalid. I also believe that the objection statute was not repealed and that it is constitutional.

Judge Preslar is a retired appellate judge. When dealing with the assignment of retired appellate judges to district courts, it has been the practice of the presiding judges of the judicial administrative regions to: (1) determine the availability of the retired appellate judge; (2) recommend the assignment to the Chief Justice of this Court; and (3) request the Chief Justice to execute the assignment. In this particular instance, Judge Paxson determined the availability of Judge Preslar and recommended his assignment to ex-Chief Justice Hill. I therefore agree with the Bank's assessment that the assignment of Judge Preslar was the joint act of Judge Paxson and the Chief Justice of this court.

However, I also agree with the Land Commissioner that Tex.Gov't Code Ann.

§ 74.053 (Vernon 1988) permits the parties to this litigation to object to the assignment. The legislature did not repeal this statute during the last legislative session.

The Bank argues that even if the objection statute has not been repealed, it is nevertheless unconstitutional under Article V, Section 11 of the Texas Constitution, which provides three grounds for the disqualification of a judge. The Bank submits that a retired judge who has chosen to remain a judicial officer subject to assignment, is a "judge" for all purposes under Article V, Section 11 of the Constitution and can be disqualified for only one or more of the three reasons set forth in the Constitution. The Bank concludes that the objection statute is unconstitutional because it permits a party to disqualify a judge for reasons not expressed in the Constitution. I disagree.

"The Constitution is to be construed as a whole, so as to give effect to every provision, and, if possible, to harmonize them." *Texas National Guard Armory Board v. McCraw*, 132 Tex. 613, 126 S.W.2d 627, 634 (1939). *See also Jones v. Williams*, 121 Tex. 94, 45 S.W.2d 130, 137 (1931). Furthermore "[i]t has long been the policy of the courts of this State to construe liberally constitutional provisions directing the action of legislatures, so as to carry out the purposes for which such provisions of the Constitution were adopted." *McCraw*, 126 S.W.2d at 634. When those provisions address the same subject matter, as in this case, they must be construed in light of each other. *Collingsworth County v. Allred*, 120 Tex. 473, 40 S.W.2d 13, 15 (1931).

Applying these rules of constitutional interpretation, I believe the objection statute does not create any additional grounds for disqualification in violation of Article V, Section 11 of the Texas Constitution. While the legislature was ill-advised in its choice of the word "disqualified," the statute does not create additional grounds for the disqualification of judges in contravention of Article V, Section 11. Instead, as part of the Court Administration Act, now codified in the Government Code, it is con-

stitutional by virtue of Article V, Section 1–a(1) of the Texas Constitution, which provides: "... the Legislature shall provide for the retirement and compensation of Justices and Judges of the Appellate Courts and District and Criminal District Courts ... and for their reassignment to active duty where and when needed...."

This constitutional provision grants the legislature the authority to reassign retired judges to active duty and to create an administrative system to accomplish this purpose. Section 74.053 of the Government Code, allowing each party one opportunity to remove a visiting judge, is simply a part of the administrative scheme and, as such, a part of the selection process for a visiting judge.

The Land Commissioner made a timely objection to the assignment, as authorized by law, and such objection was adequate to remove the assigned judge from further participation in the case. Therefore, I concur in the judgment of the court.

CULVER, Justice, dissenting.

I respectfully dissent for the reasons expressed in the concurring opinions of Justices Ray and Gonzalez. I would hold that the assignment of Judge Preslar was the joint act of both the presiding judge and the Chief Justice, and therefore valid. Further, I believe the 70th Legislature repealed the objection statute, Tex.Gov't Code Ann. § 74.053 (Vernon 1988). Hence, the Land Commissioner had no right to object to the valid assignment of Judge Preslar. I would deny the petition for writ of mandamus.